## Appeal of James H. Persons.

Docket No. 3250.    Promulgated November 30, 1926.

1. An alleged partnership was merely a scheme of the taxpayer to defeat and evade the tax upon the income of a business owned entirely by him and the Commissioner correctly determined that the profits of the business constituted income to him and that the 50 per cent penalty imposed by section 250 (b) of the Revenue Act of 1918 should be added to the deficiency.

2. Additional compensation authorized and credited to the taxpayer upon the books of the corporation in 1920 and received by him in 1921 was not income for the year 1920, since the taxpayer

kept his books and rendered his return upon the cash receipts and disbursements basis.

3. The Commissioner's disallowance of a loss of $9,260 from the operation of a farm during 1920 approved.

*Lawrence A. Baker, Esq.*, and *Leroy Saunders, Esq.*, for the petitioner.

*A. Calder Mackay, Esq.*, and *Wm. H. Lawder, Esq.*, for the Commissioner.

At the hearing taxpayer withdrew certain assignments of error as to the Commissioner's determination of deficiencies for 1918 and 1919. For the calendar year 1920 the Commissioner determined a deficiency in tax of $54,673.65, and in addition he determined that the taxpayer willfully filed a false and fraudulent return for the calendar year 1920 with intent to evade the tax, and accordingly added to the deficiency the 50 per cent penalty as provided in section 250 (b) of the Revenue Act of 1918.

The issues are (1) whether all or only one-fourth of a profit of $104,939.97 for 1920 from the operation of a coal mine under the name of the Liberty Coal Co. was income to the taxpayer, and whether taxpayer's income-tax return for 1920 was willfully false and fraudulent with intent to evade the tax; (2) whether additional compensation of $25,000 credited to the taxpayer in 1920 but not received by him until 1921 was income in the taxable year 1920; and (3) whether taxpayer sustained a loss of $9,260 in the operation of a farm.

FINDINGS OF FACT.

The taxpayer is a resident of Terre Haute, Ind. During 1920 and for several years prior thereto he and one Randolph owned in equal portions the capital stock of the Queen City Coal Co., a corporation engaged in mining and selling coal near Jasonville.

The taxpayer also owned a farm near Terre Haute which he operated for profit. In the latter part of 1918 taxpayer purchased a coal mine and equipment near Jasonville which he thereafter operated as an individual under the name of the Liberty Coal Co. He derived no profit from the operation of this mine in 1918 and a profit of only $333.34 was made during 1919. For the calendar year 1920 the profits from the operation of the Liberty Coal Co. amounted to $104,939.97. Separate books of account were kept for the Liberty Coal Co., and for the calendar year 1920 they reflected a profit of $102,762.30, which was increased by the Commissioner to the amount above stated through a reduction of depletion claimed in the amount of $2,177.67.

On March 15, 1921, the taxpayer filed a partnership income-tax return for the Liberty Coal Co. showing the net income as belonging one-fourth each to himself, his wife Florence E. Persons, his brother-in-law E. W. Ferguson, and his bookkeeper H. O. Bedwell. These individuals in their income-tax returns for 1921, which were prepared by H. O. Bedwell, each reported one-fourth of the profits of the Liberty Coal Co. and paid the tax shown to be due on said returns. The taxpayer reported as his proportion of the profits from the Liberty Coal Co. $25,690.56. The other individuals mentioned each reported $25,690.58. Bedwell kept the books of the Queen City Coal Co. and the Liberty Coal Co. and performed other services for the Liberty Coal Co. for which he was paid salaries by the corporation and the taxpayer respectively. During the year 1920 Ferguson was not in the employ of either the corporation or the taxpayer. Some time during that year he purchased an interest in a retail coal yard at Terre Haute, through which business a small portion of the coal produced by the Liberty Coal Co. during 1920 was sold, on which no commission as such was charged. Mrs. Persons rendered no service to the Liberty Coal Co. During the year 1920 the taxpayer withdrew from the profits of the Liberty Coal Co. various amounts aggregating more than $80,000. No portion of the profits of the Liberty Coal Co. was paid to any one other than the taxpayer during the taxable year. No entry was made upon the books during 1920 to show that any one other than the taxpayer had any interest in the profits of the business. At some time subsequent to March 1, 1921, certain erasures were made on page 67 of the journal containing the closing entries for the year 1920, and the profit of $102,762.30, as shown by the books, was credited one-fourth each to the four individuals mentioned. On some date subsequent to March 1, 1921, four loose-leaf sheets were placed in the loose-leaf ledger of the Liberty Coal Co., bearing the respective names of the four individuals mentioned, on which they were credited with one-fourth of the profits of the Liberty Coal Co.

About March 15, 1921, taxpayer gave his wife, Ferguson, and Bedwell his personal check for an undisclosed amount and during several months following gave his wife and Ferguson additional personal checks, all of which aggregated $15,000 to each of them. The Liberty Coal Co. was not operated from January 1, 1921, until about July, 1921, due to the fact that No. 5 seam from which coal had theretofore been removed was exhausted and it was necessary to sink an additional shaft to reach No. 4 seam. The taxpayer incorporated the business about July, 1921, and gave Bedwell his personal check for $25,000, with the understanding and agreement that Bedwell would immediately endorse it to the corporation for stock, which he did.

In December, 1920, the directors of the Queen City Coal Co. voted the taxpayer an additional salary of $25,000, which was credited to him upon its books. The corporation had sufficient cash at the time the salary was voted to pay the same. The salary was paid to and received by the taxpayer in January, 1921.

During the taxable year the taxpayer's expenditures in the opertion of his farm exceeded his receipts in the amount of $9,260.

OPINION.

LITTLETON: The testimony of the taxpayer and his witnesses relating to the alleged partnership in the operation of the Liberty Coal Co. during the year 1920 is so contradictory, vague and indefinite that it is impossible for the Board to make any finding that any attempt was made to organize a valid partnership prior to or during the year 1920. The testimony submitted on behalf of the taxpayer can not be reconciled so as to be in any way consistent with the belief that there was any agreement to divide the profits from the operation of the Liberty Coal Mine for the year 1920. The other evidence in the case, which will be hereafter referred to, justifies the conclusion that the division of the profits of the Liberty Coal Co. was first thought of in the year 1921 and that the entries in the ledger showing a division of the profits were made some time in or about the year 1923.

The taxpayer, his wife, and Bedwell, the bookkeeper, who were the only witnesses produced by the taxpayer at the first hearing of this case (the hearing having been continued for a month in order to secure the testimony of the other witnesses), testified that in December, 1919, a conversation was held at the home of the taxpayer in Terre Haute, at which the taxpayer, his wife, Bedwell, and Ferguson were all present; that at that time the taxpayer informed the persons mentioned that it was his intention to divide the profits of the Liberty Coal Co. for the year 1920 equally between himself, Bedwell and Ferguson. The taxpayer testified that his reason for this was that he desired to give his attention to other matters and desired that Bedwell should operate the mine and that Ferguson should sell the coal; that at the time of this conversation Mrs. Persons insisted that the profits be divided four ways and that she receive one-fourth, and that this was agreed to. The taxpayer testified further that an accountant who had been employed to audit the books of the Queen City Coal Co. had suggested to him that if he would divide his profits four ways he would save considerable income tax. Bedwell first testified that the entries in the books of the Liberty Coal Co. showing an equal distribution of profits between the taxpayer, his wife, Ferguson, and himself were made on or about January 1, 1921, immediately after the close of the calendar year 1920, and after

expert testimony, hereinafter referred to, had been given he testified that these entries were made on or about March 15, 1921. The outstanding feature of the testimony of these witnesses is that they could remember very little about anything except that in December, 1919, they organized a partnership. They could not remember anything that was said at that time except that the profits of the Liberty Coal Co. for 1920 were to be divided four ways. The Liberty Coal Co. had made practically no profits since the beginning of operations and no further reason was given why it was decided in 1919 to divide the profits between the four individuals mentioned. No witness for the taxpayer testified that any of the individuals other than the taxpayer were to have any interest in the property or business of the Liberty Coal Co.

After the testimony of these witnesses had been given, the Board called an expert of more than thirty years' experience to examine the book entries, the age of the ink, etc., and to testify as to when the entries crediting one-fourth of the profits to the four individuals named were made. After having made investigation this witness testified on September 21, 1925, that the entries showing the distribution of profits of $102,762.30, one-fourth each to the taxpayer, Florence E. Persons, H. O. Bedwell, and Earl W. Ferguson, claimed to have been made in January, 1921, were made less than three years ago and that certain other entries appearing on the books of the company concerning its ordinary transactions reported to have been made at the close of the year 1920 were made at that time.

At a further hearing held October 29, 1925, E. W. Ferguson testified that the first he heard of the division of the profits of the Liberty Coal Co. was in the spring of 1920, when he was informed by the taxpayer that the profits were to be divided equally between the persons hereinbefore named. This and the fact that some time after the end of the year 1921 the taxpayer gave him personal checks aggregating $15,000 was about all that he could remember about the matter. The accountant who had advised the division of profits of the Liberty Coal Co. was called as a witness and testified first that he first suggested this to the taxpayer in the spring of 1920. The testimony of this witness is typical of the testimony of most of the taxpayer's witnesses concerning this alleged partnership. A portion of his testimony concerning his part in connection with the alleged partnership was as follows:

Q. When did you have that conversation with Mr. Persons? [About the formation of the partnership].

A. I could not say.

Q. You could not say?

A. My recollection is that it was either the first part of 1920 or during the year 1920. As to the dates, I can not say. * * *

*     *     *     *     *     *     *

Mr. JAMES. When you suggested the advisability of forming a partnership, did you go into detail as to the methods to be pursued, or anything of that sort; beyond the general suggestion that a partnership should be formed?

The WITNESS. I do not see there were any details to go into. Do you mean as to the division of the profits?

Q. The division of profits or the persons among whom they were to be divided?

A. Yes, sir.

Q. What was the substance of that conversation?

A. What was said * * * the names, you mean?

Q. Yes, tell the conversation about the division of profits.

A. I do not recall that; all I know is that I suggested they form a partnership with four partners.

Q. Why did you suggest four partners?

A. Why did I?

Q. Yes, why did you suggest that; you were suggesting that he divide up his money, weren't you? And how did it come that you suggested that he divide it among four partners?

A. What is wrong with that?

Q. It is not merely a question of being right or wrong, but I am trying to get at how this suggestion came about. You suggested that he form a partnership.

A. Yes, sir.

Q. And then dividing $100,000 among four people?

A. Not at that time.

Q. Well, it involved dividing whatever sum he made during that year among four people?

A. Yes, sir.

Q. You were suggesting to him that he give up three-fourths of the profits that he would make, weren't you?

A. Give up actual cash?

Q. Yes.

A. No, sir.

Q. You were not?

A. No, sir.

Q. What was the purpose of the partnership?

A. My suggestion to him was this, that this partnership should be formed on the basis of the division of one-fourth of the profits, no profits to be distributed until he had received a return on his original capital investment.

Q. Well, interpreting that understanding, do you regard it as a proper book interpretation to make the entry on page 67 of that journal?

A. Absolutely, that is the only way that you could do it.

Q. They were to get the book credits and he was to get the money, is that the idea?

A. That is it.

Q. Now, was that a new suggestion to Mr. Persons at the time you made it, as far as you know?

A. A new suggestion from myself?

Q. Yes.

A. Yes, sir.

Q. That was not before February or March, 1920?

A. That is my recollection. It would not be before that, so far as I know.

By Mr. MACKAY:

Q. It might have been later?

A. Yes, sir, it may have been later.

Q. It might have been towards the fall of the year?

A. Yes, sir, it might have been.

Q. It might have been the first of January, 1921, as far as you know?

A. I hardly think so.

By Mr. JAMES:

Q. It might have been?

A. Yes.

Q. At that time, in 1920, when you made that suggestion, did Mr. Persons or Mr. Bedwell tell you that a partnership had been formed?

A. They did not.

The Board is of the opinion from the entire record that no valid partnership was formed or attempted to be formed, that the purported division of profits of the Liberty Coal Co. was merely a scheme to evade the tax, and that the return of this taxpayer for the year 1920 was willfully false and fraudulent with intent to evade the tax. The Commissioner therefore correctly held that the profits from the operations of the Liberty Coal Co. constituted income to this taxpayer and that he was also liable for the 50 per cent penalty. It should be stated in connection with this proceeding that counsel appearing on behalf of the taxpayer presented to the Board every obtainable fact, whether favorable or unfavorable, which might have any bearing upon either the correctness or incorrectness of the tax or the penalty.

The Commissioner held that the additional compensation allowed the taxpayer by the Queen City Coal Co. was constructively received by him in 1920. We are of opinion that this determination was in error. He made his return on the cash receipts and disbursements basis and he did not receive the amount until the year 1921.

The taxpayer employed one Markle to manage his farm. Regular books of account were not kept but all receipts, purchases and disbursements during the year were entered upon separate slips and these were used by the accountant who prepared the taxpayer's return in determining the profit or loss in the operation of the farm for 1920. Some time after the return had been made these slips were destroyed. Markle lost his life in a railroad wreck shortly after 1920. The Board is unable from the evidence to find that the taxpayer sustained a deductible loss from farm operations. We have no knowledge as to the source of the income or as to the nature of the expenditures during the year, that is, whether the expenditures were in fact ordinary and necessary expenses or disbursements for improvements and betterments. In these circumstances the Commissioner's determination in this regard is approved.

*Judgment will be entered on 15 days' notice, under Rule 50.*